UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-10023-CR-MARTINEZ/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GARRETT JEORME McADAMS,

    Defendant.

_____

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant's Motion to Suppress Evidence (ECF No. 18) which was referred to United States Magistrate Judge, Lurana S. Snow, for a Report and Recommendation. The motion is fully briefed and an evidentiary hearing was conducted on April 12, 2019. The Defendant is charged with possession of a firearm as a convicted felon (Count 1) and possession of 29 firearms and 50 rounds of ammunition as a convicted felon (Count 2), in violation of 18 U.S.C. § 922(g)(1). He seeks to suppress the firearms and ammunition listed in Count 2 on the ground that the Defendant's consent to search his residence and the Search Warrant obtained for his residence were the product of questioning by agents before the Defendant was advised of his Miranda rights. The motion also challenges the description of his residence in the Search Warrant, but this ground was withdrawn by the Defendant at the hearing.

### I. EVIDENCE PRESENTED

The sole witness at the evidentiary hearing on the instant motion was Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) Special Agent Phillip Holmes. Agent Holmes testified that in June 2018, an agent from another field office advised him that a convicted felon in South Florida was selling firearms online. Agent Holmes was able to identify that person as the

Defendant, whom the agent identified in Court. On the Defendant's Florida driver's license, he listed his address at 4139 Eagle Avenue, Key West, Florida. Agent Holmes learned that the Defendant had been convicted of state and federal felonies.

Agent Holmes enlisted the help of another agent for an undercover operation, where the other agent would pose as a buyer of firearms. The undercover agent (UC) contacted the Defendant by phone and text message and arranged to purchase one of two firearms the Defendant was offering for sale. The sale was to take place on June 28, 2018 at a hotel in Key West located approximately one mile from the Defendant's residence. Surveillance agents observed the meeting between the Defendant and the UC during which the UC purchased the firearm.

After the transaction concluded, agents followed the Defendant as he drove back toward his residence. A traffic stop was conducted, after which the Defendant exited his vehicle. Agent Holmes was the first officer to speak to the Defendant. The agent did not have his weapon drawn, and the Defendant was not handcuffed or shoved up against his car. Agent Holmes identified himself as an ATF agent and informed the Defendant that he had just sold a firearm to an undercover agent. The Defendant agreed to speak to Agent Holmes, and the agent read the Defendant his rights from a written waiver of rights form. (Government's Ex. 1) The Defendant initialed each of the rights listed on the form and signed the form. Agent Holmes described the Defendant's demeanor as calm, and stated that the Defendant appeared to understand his rights. The waiver form was not signed by the agent and did not list the time it was signed by the Defendant.

Agent Holmes asked the Defendant about the second firearm that was being advertised online. The Defendant responded that the second firearm was inside his residence, together with five or six other firearms. The agent then presented the Defendant with a Consent to Search form, which the Defendant signed. (Government's Ex. 2) Once again, Agent Holmes described the Defendant's demeanor as calm. Neither Agent Holmes nor any of the other officers present had drawn a gun, and no threats were made to the Defendant. The consent form was

witnessed by Agent Holmes, but it did not list the time it was signed or describe the property to be searched.

The Defendant pointed out his residence and opened the door with a key. Agent Holmes and seven or eight other agents then entered the home, and the Defendant pointed out the location of other firearms. The Defendant never asked the agents to stop searching or requested to speak to an attorney. Agent Holmes observed that the residence contained multiple rounds of ammunition and more than five or six firearms. At that point, all of the agents were in the main living area of the residence. Agent Holmes decided that a very thorough search of the residence was necessary, and sent one of the officers to obtain a state search warrant. The Defendant was taken to the police station.

When Agent Holmes and the Defendant arrived at the station, the Defendant voiced some medical complaints, and medical personnel were summoned. Once it was determined that the Defendant was well enough to proceed, he was shown the <u>Miranda</u> waiver he had signed. The Defendant reviewed the rights listed on the waiver and acknowledged that he had signed it. The Defendant asked if he could contact his lawyer if he had a question while speaking to Agent Holmes. The agent construed this as a request for counsel and terminated the interview. These events were videotaped, and a DVD of the interview was introduced into evidence. (Government's Ex. 8)

At 5:24 p.m., a Search Warrant was issued for the Defendant's residence. (Government's Ex. 4)   It contained a description of the residence as depicted in Government's Exhibit 3, an aerial photograph of the buildings on the property of 4139 Eagle Avenue, Key West, Florida. Agents then executed the Search Warrant, which resulted in the seizure of 30 firearms, thousands of rounds of ammunition and tools for making ammunition. On cross-examination, Agent Holmes conceded that his report did not mention the fact that prior to the initial entry into the Defendant's residence, the Defendant executed a waiver of rights form and a Consent to Search form.

## II. RECOMMENDATIONS OF LAW

The sole question for determination is whether the Defendant waived his Miranda rights before stating that there were firearms inside his residence and executing the Consent to Search that residence. Agent Holmes testified that he presented the Defendant with the waiver of rights form before asking him any questions. The undersigned finds Agent Holmes to be fully credible and not mistaken about the timing of the Defendant's waiver of his Miranda rights. Therefore, the undersigned concludes that the initial search of the Defendant's residence, as well as the subsequent search pursuant to the state Search Warrant, were not tainted by a Miranda violation. Accordingly, there is no legal basis to suppress the evidence seized from the Defendant's residence.

## CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Defendant's Motion to Suppress Evidence (ECF No. 18) be DENIED.

The parties may file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Key West, Florida, this 14th day of April, 2019.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Daniel Marcet (MIA)
Richard Wunsch, Esq.